## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                                          )
GAWKER MEDIA, LLC, et al.,                )
                                          )
                     Plaintiffs,          )
                                          )
         v.                               )        Civil No. 15-cv-0363 (KBJ)
                                          )
UNITED STATES DEPARTMENT                  )
OF STATE,                                 )
                                          )
                     Defendant.           )
_____   )
```

## MEMORANDUM OPINION AND ORDER

In a case brought under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, the parties are typically engaged in a pitched battle over the agency's alleged

satisfaction of certain core responsibilities, the most prominent of which is an agency's

duty under the FOIA to make "records promptly available to any person" who submits a

proper request for records (subject to certain statutory exemptions).  *Id.* § 552(a)(3)(A).

Additionally, as a threshold matter, agencies have a statutory duty to "make reasonable

efforts to search for the [requested] records[.]"  *Id.* § 552(a)(3)(C).  The instant

squabble involves a dispute regarding, in essence, whether the FOIA requires an agency

to go beyond the ordinary scope of these search-related requirements, by making

reasonable efforts to locate and produce requested records that are *outside* of the

agency's immediate possession and control, because the requested documents are solely

in the custody of a *former* agency official.

To be specific, Gawker Media, LLC and Tim Cook (collectively, "Plaintiffs")

have filed the instant case to enforce the obligation that they say the Department of

State ("State") has under the FOIA to produce "all e-mail communications between" former Deputy Assistant Secretary of State Philippe Reines and a list of 34 media outlets with which Reines communicated while he was employed at State.  (*See* Compl., ECF No. 1, ¶ 13.)  State has searched and produced the non-exempt responsive records that exist in its own files.  (*See* Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mot. for Summ. J."), ECF No. 41-2, at 6.)[1]  State has also reached out to the former employee (Reines), and in response, Reines provided State with 20 boxes of additional records, consisting primarily of emails sent to or from Reines's personal, non-government email account that Reines has (belatedly) determined might constitute federal records.  (*See* Def.'s Mem. in Opp'n to Pls.' Mot. for Discovery ("Def.'s Opp'n"), ECF No. 45, at 6–7.)  Having searched this additional trove of documents, State has now produced those records that it considers non-exempt and responsive to Plaintiffs' document request, and it has also filed a motion for summary judgment in the instant case, claiming that the agency's production is complete and that summary judgment should be granted in the agency's favor because it has satisfied its FOIA obligations in full.  (*See generally* Def.'s Mot. for Summ. J.)

Not surprisingly, Plaintiffs have announced their intent to file a brief in opposition to State's summary judgment motion.  (*See* Dec. 19, 2016 Joint Status Report, ECF No. 39, at 1.)  But, first—and before this Court at present—is Plaintiffs' Cross-Motion for Discovery, which seeks an order compelling Reines to produce additional information about his own records review, including an affidavit that details the methodology Reines employed to search his private email for government

---

[1] Page-number citations to documents the parties have filed refer to the page numbers that the Court's electronic filing system assigns.

documents, and a sworn certification that Reines has turned over all government-related records in his private email accounts.  (*See* Pls.' Mem. in Supp. of Pls.' Cross-Mot. for Discovery ("Pls.' Mot."), ECF No. 44-1, at 4.)

For the reasons explained fully in Part III below, Plaintiffs' Cross-Motion for Discovery will be **DENIED**.  In short, this Court rejects Plaintiffs' contention that the Court cannot adequately assess the extent to which State successfully discharged its FOIA search obligations (the issue in State's pending motion for summary judgment) without further details regarding the nature of Reines's threshold search of his personal files.  (*See id.* at 6–7.)  To the contrary, the Court concludes that the FOIA imposes no obligation on an agency to solicit or produce documents held solely by a *former* agency official, at least in the absence of evidence indicating that the agency or its former employee maintained the documents outside the agency's custody in an attempt to thwart FOIA obligations.  *Cf. Judicial Watch v. Dep't of State*, No. 13-1363, 2016 U.S. Dist. LEXIS 62283, at *11–13 (D.D.C. May 4, 2016).  Thus, in this Court's view, information regarding the scope and nature of a former official's initial records review is irrelevant to resolving the issue of the adequacy of the *agency's* search for records. What is more, the additional search-related details that Plaintiffs request in their discovery motion are well beyond the scope of what a court ordinarily considers in a typical case—i.e., when evaluating the adequacy of an agency's search of its *own* files—which means that such information likewise plays no role in this Court's assessment of whether State has conducted a reasonable search for records and is entitled to summary judgment.

## I.    BACKGROUND

 Plaintiffs' complaint alleges that, "[b]y letter dated September 24, 2012, Gawker and Mr. Cook submitted a FOIA request to State for all e-mail communications between Assistant Secretary Reines and reporters from a list of 34 different media outlets." (Compl. ¶ 13.)  Approximately ten months later, on July 16, 2013, State informed Plaintiffs that it had identified the two agency record systems most likely to maintain the responsive records, but that, after a "thorough search" of those systems, no responsive records were located.  (*See id.* ¶ 14.)  Plaintiffs then submitted a timely administrative appeal, and provided State with specific evidence indicating that email communications between Reines and at least one of the identified media organizations existed.  (*See id.* ¶ 15; *see also id.* at 1.)  Plaintiffs further noted that the proffered communications had already been published online.  (*See id.* ¶ 15; *see also id.* at 1.)

 In response to Plaintiffs' appeal, on March 5, 2014, State notified Plaintiffs that it was remanding the FOIA request for additional searches.  (*See id.* ¶ 16.)  Plaintiffs initiated this lawsuit after more than twenty working days elapsed without any response from State regarding these additional searches; their one-count complaint challenges State's failure to conduct an adequate search, and to produce responsive records in the allotted time.  (*See id.* ¶¶ 13–18; *see also id.* at 2.)

 Two days prior to Plaintiffs' initiation of this lawsuit, and purportedly "[i]ndependent of this case and in furtherance of its Federal Records Act obligations" (Def.'s Opp'n at 6), State wrote a letter to Reines—who had left State in February 2013 and was no longer an agency employee at the time State wrote to him (*see* Decl. of Eric Stein ("Stein Decl."), ECF No. 41-1, at 9 n.6)—requesting that Reines "provide any

federal records in his possession from his tenure at State, including e-mails sent to or

from a personal e-mail account that were not otherwise contained in State's

recordkeeping system" (Def.'s Opp'n at 6–7).  (*See also* March 11, 2015 Letter from

Patrick F. Kennedy, Ex. A to Def's Opp'n, ECF No. 45-2, at 2–3.)  On July 28, 2015, in

response to State's letter, Reines provided State with 20 boxes of materials that

Reines's counsel characterized as "potential[] . . . federal record[s]."  (*See* July 28,

2015 Letter from Beth A. Wilkinson, Ex. B to Def.'s Opp'n, ECF No. 45-3, at 2 ("The

production of a given document herein does not indicate that we believe it is potentially

a federal record.  Rather, we have been over-inclusive in our review[.]").)  State then

made a preliminary determination that the records Reines had provided might contain

materials responsive to Plaintiffs' FOIA request, and indicated to this Court in the

context of the instant action that the agency would require additional time to complete

its search and production of both the records that were originally in its possession and

those that Reines had returned.  (*See* Aug. 3, 2015 Joint Status Report, ECF No. 13, at

4–8.)

     Plaintiffs filed a motion that they styled as a "Motion to Compel" following

State's revelation of the potentially responsive records on Reines's private email

account.  (*See generally* Pls.' Mot. to Compel, ECF No. 24.)  Complaining that "[f]or

more than two years after Mr. Reines left State, he apparently failed to take any steps to

notify State regarding the private e-mail accounts he had used for official work

purposes," Plaintiffs urged the Court to order State to produce sworn affidavits from

appropriate officials.  (Pls.' Mot. to Compel at 8; *see also id.* at 1 (asking for sworn

statements that addressed, *inter alia*, Reines's authorization to use a non-government

email account for work-related purposes).)  In addition, Plaintiffs' motion implored this Court to request that Reines act voluntarily to produce a sworn affidavit which detailed, among other things, the methods he employed to identify work-related emails in his private email account.  (*See id.*)  In an oral ruling on December 10, 2015, this Court denied Plaintiffs' motion to compel, explaining that because the document-production process was still ongoing, the Court would not require State to secure affidavits about the scope of the search at that time.  (*See* Dec. 10, 2015 Hr'g Tr., ECF No. 28, at 38–40.)

Thereafter, State completed its processing of responsive documents, and filed a motion for summary judgment.  (*See generally* Def.'s Mot. for Summ. J.)  In response to State's summary judgment motion, Plaintiffs filed the instant cross-motion, which they have styled as a "Cross-Motion for Discovery[,]" and which seeks a court order that compels Reines to produce an affidavit that provides certain information:  (1) the specific non-government email addresses that Reines used for government work-related purposes (and in particular, the ones he ultimately searched for potential agency records); (2) the particular methods Reines employed when he identified all government-related emails stored on his private email accounts; and (3) a sworn certification that Reines has turned over all government-related emails that were located in his private email accounts.  (*See* Pls.' Mot. at 4.)[2]  In their cross-motion for discovery, Plaintiffs argue that the requested information about the scope of Reines's document-collection efforts is warranted, because the circumstances justify this Court's

---

[2] Upon its receipt of Plaintiffs' cross-motion for discovery, this Court stayed Plaintiffs' obligation to respond to Defendant's motion for summary judgment until further order of the Court.  (*See* Min. Order of April 17, 2017.)

consideration of that information as part of its assessment of the adequacy of State's search.  (*See id.* at 5–10.)  Plaintiffs also maintain that the Federal Rules authorize this Court to order discovery under the instant circumstances, because the information Plaintiffs seek is relevant and beneficial, and is not duplicative or burdensome.  (*See id.* at 10–14.)  Plaintiffs further insist that discovery has been permitted in other FOIA cases where, as here, a sufficient question as to the agency's good faith in processing documents in response to a FOIA request has been raised.  (*See id.* at 5–6.)

For its part, in its brief in opposition to Plaintiffs' discovery motion, State vehemently contends that the salient question for FOIA purposes is whether State conducted an adequate search of the materials that Reines returned, and not whether Reines properly conducted the search for federal records in his email account in the first place; therefore, State says, Plaintiffs' requested discovery is irrelevant.  (*See* Def.'s Opp'n at 14.)  State further emphasizes that, to the extent that Plaintiffs seek discovery because they believe that Reines might not have given all pertinent federal records back to the agency, "[t]he basis for the instant discovery motion is purely speculative."  (*Id.* at 10.)  State also maintains that Plaintiffs have offered no evidence to indicate that the agency acted in bad faith when responding to Plaintiffs' FOIA request.  (*See id.* at 9–10.)

Plaintiffs' cross-motion for discovery is currently ripe for this Court's review (*see* Pls.' Mot.; Def.'s Opp'n; Pls.' Reply in Support of Pls.' Mot. ("Pls.' Reply"), ECF No. 46, at 4), and the Court held a hearing on the motion on June 20, 2017 (*see generally* June 20, 2017 Hr'g Tr ("Hr'g Tr.")).

## II.    LEGAL STANDARD

"Courts have broad discretion to manage the scope of discovery in FOIA cases." *Long v. Immigration & Customs Enf't*, 149 F. Supp. 3d 39, 58 (D.D.C. 2015) (internal quotation marks and citation omitted).  As a general rule, "[d]iscovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains."  *Landmark Legal Found. v. EPA*, 959 F. Supp. 2d 175, 183 (D.D.C. 2013) (citing *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006)).  However, limited discovery may be appropriate in certain circumstances, such as when "it appears an agency has not undertaken an adequate search for responsive documents," *Taylor v. Babbitt*, 673 F. Supp. 2d 20, 22 (D.D.C. 2009) (citation omitted), or "when a plaintiff raises a sufficient question as to the agency's good faith in processing documents in response to a FOIA request[,]" *Judicial Watch*, 2016 U.S. Dist. LEXIS 62283, at *9. Absent such a showing, "the judge has broad discretion to forgo discovery."  *Jarvik v. CIA*, 741 F. Supp. 2d 106, 122 (D.D.C. 2010).

## III.    DISCUSSION

Plaintiffs' discovery request seeks certain details about how Philippe Reines (a *former* State Department official) searched his private email account for any federal records still in his possession after State approached him and asked him to return any such documents to the agency.  According to Plaintiffs, this Court cannot assess the adequacy of State's search for records that are responsive to their specific FOIA request for the purpose of ruling on State's pending motion for summary judgment without the requested discovery about the nature and scope of Reines's records review.  (*See* Pls.'

Mot. at 6–9.)  But that contention rests on the mistaken premise that State's FOIA duty to make reasonable efforts to locate and produce records in response to a document request extends to records that are outside of the agency's immediate possession and control, as explained below.  Plaintiffs are also mistaken to insist that the information that they are requesting "is the same type of information that would have been provided in such an agency affidavit if Mr. Reines had properly conducted his official State business on a U.S. Government system, as opposed to his private e-mail account(s)." (Pls.' Reply at 4.)

To the contrary, for the reasons explained below, this Court concludes that the requested details about Reines's threshold search for records have no bearing on the question of the adequacy of *State's* FOIA search, and in any event, Plaintiffs are seeking information that is far beyond what courts typically consider when they answer this FOIA question.  Accordingly, Plaintiffs' motion for discovery will be denied.

### A.  The FOIA Does Not Obligate An Agency To Retrieve And Search Documents In The Possession Of Its Former Employees; Therefore, Plaintiffs' Discovery Request Is Not Relevant To The Issue Of The Adequacy Of State's Search

Subject to certain statutory exemptions, the FOIA requires federal agencies to make "records promptly available to any person" who submits a proper request for records.  5 U.S.C. § 552(a)(3)(A).  Pursuant to this duty of disclosure, agencies must undertake searches that are "reasonably calculated to uncover all relevant documents[,]" *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); furthermore, "[i]n order to obtain summary judgment[,] the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested[,]" *Oglesby v. Dep't of Army*,

920 F.2d 57, 68 (D.C. Cir. 1990).

Notably, in the fulfillment of these duties, an agency need not move heaven and earth to locate and produce requested records, and this is so even when the sought-after documents are known to exist and to have once been in the agency's possession. *See Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 135 (D.D.C. 2015) (remarking that "[t]he adequacy of a FOIA search is generally determined by the appropriateness of the methods used to carry out the search, and not by the actual search results" (citation omitted)); *see also Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate."). And, indeed, the Supreme Court has made crystal clear that an agency need only conduct a reasonable search of its own files in response to a FOIA request, because "possession or control" of the documents at issue is, in most circumstances, "a prerequisite to FOIA disclosure duties[.]" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980).

In *Kissinger*, the Supreme Court specifically held that the FOIA did not require an agency to undertake retrieval of documents that it no longer possessed at the time the FOIA request was made (even if the removal of the documents was arguably improper), because "Congress did not mean that an agency improperly withholds a document which has been removed from the possession of the agency prior to the filing of the FOIA request." *Id.* at 150. The *Kissinger* Court reasoned that, "[i]n such a case, the agency has neither the custody or control necessary to enable it to withhold" the records. *Id.* at 150–51; *see also id.* at 150 (explaining that Congress did not intend,

through the FOIA, "to permit private actions to recover records wrongfully removed

from Government custody"); *Founding Church of Scientology of Washington, D.C. v.*

*Regan*, 670 F.2d 1158, 1164 (D.C. Cir. 1981) (reversing district court order directing

agency to obtain records in the possession of an international organization).  And as far

as this Court can tell, the only circumstance in which an agency's FOIA obligations

might extend to documents that are not in the agency's immediate custody or control

arises when there is evidence to suggest that the requested records are outside of the

agency's control *precisely because* the agency has attempted to shield its records from

search or disclosure under the FOIA.  *See, e.g.*, *Judicial Watch*, 2016 U.S. Dist. LEXIS

62283, at *12–*13; *Landmark*, 959 F. Supp. 2d at 184 *cf. Kissinger*, 445 U.S. at 155 n.9

("We need not decide whether this [possession or control] standard might be displaced

in the event that it was shown that an agency official purposefully routed a document

out of agency possession in order to circumvent a FOIA request.").[3]

    In the instant case, Plaintiffs insist that this Court cannot evaluate whether or not

State has satisfied its FOIA duties without information regarding the threshold search

that Reines conducted when he gathered records that were unquestionably outside of

---

[3] Plaintiffs here do not appear to rely upon any argument related to the timing of Reines's departure relative to the submission of the FOIA request.  *See Kissinger*, 445 U.S. at 155 n.9 (suggesting that the agency possesses the requested records if the records are in agency custody *at the time the FOIA request is filed*, and "express[ing] no opinion as to whether an agency withholds documents which have been wrongfully removed by an individual *after* a request is filed" (emphasis added)).  Regardless, this Court considers the fact that Plaintiffs' FOIA request was submitted to State prior to Reines's departure to be of no moment under the circumstances presented here.  This is because, in the absence of any evidence of purposeful displacement of the records in order to evade production under the FOIA, the realities of electronic storage and extended delays in document processing are now such (some 35-plus years after *Kissinger* was authored) that it is exceedingly difficult to ascertain why, and under what circumstances, it *matters* that the agency may have possessed a responsive record when the FOIA request is received, but does not when the agency actually undertakes to process the request.  *Cf. Bigwood*, 132 F. Supp. 3d at 135 ("The adequacy of a FOIA search is generally determined by the appropriateness of the methods used to carry out the search, and not by the actual search results." (citing *Iturralde*, 315 F.3d at 315)).

State's custody or control.  However, Plaintiffs have failed to identify any affirmative

obligation on State's part to retrieve records from former employees in the course of

responding to a FOIA request (*see* Hr'g Tr. at 19:23–20:16), and they have not

explained how, absent any such duty to search and retrieve the records that Reines

maintained outside of State's custody, any failure of Reines to search adequately, or

tender properly, the government-related emails contained in his private email account

has any bearing whatsoever on the question of whether State has conducted an adequate

search of its records for FOIA purposes.  Plaintiffs have also been unable to identify

anything in the record here that even remotely suggests bad faith—i.e., that State was

attempting to thwart its FOIA obligations by encouraging its employees to use personal

email accounts, or that Reines was engaged in a deliberate effort to prevent the

requested documents from being produced.  (*See, e.g.*, *id.* at 13:13–15:17.)  And

without any such evidence, this Court finds that the contention that it cannot proceed to

evaluate State's summary judgment arguments without gathering additional details

regarding Reines's threshold records review makes little sense.[4]

    Put another way, it is clear to this Court that the FOIA obligates *State*—not

Reines—to search for any responsive records that are in the agency's possession or

control, and here, State has proffered a declaration that details the methods that the

agency employed to search both the documents that were originally in its custody and

---

[4] The total absence of any indicia of bad faith distinguishes the instant case from prior FOIA cases
involving State Department employees and the use of private email servers. *See, e.g.*, *Judicial Watch*,
2016 U.S. Dist. LEXIS 62283, at *11–13 (permitting limited discovery in light of evidence that a
private email server "was established eight days prior" to Secretary Clinton being sworn in as Secretary
of State, as well as emails acknowledging that any government email account would be subject to the
FOIA); *Judicial Watch v. Dep't of State*, No. 14-1242, 2016 WL 1270980, at *1 (D.D.C. Mar. 29, 2016)
(permitting discovery based on "the facts and circumstances surrounding Secretary Clinton's
extraordinary and exclusive use of her" private email account).

the documents that the agency came to possess when Reines returned them.  (*See* Stein

Decl. at 5–14.)  Plaintiffs have not shown that this Court's analysis of State's summary

judgment motion requires anything more.

> **B.     Plaintiffs' Discovery Request Seeks Information Above And Beyond
> That Typically Available When State Conducts A Search Of Records
> In Its Custody**

Even assuming, *arguendo*, that State had an obligation under the FOIA to

retrieve and search records outside of its custody and control in order to fulfill its duty

to respond to Plaintiffs' document request, this Court finds that Plaintiffs' request for

information about the nature and scope of Reines's record search would still be far out

of bounds.  As noted, Plaintiffs are asking this Court to require Reines to produce a

sworn affidavit that identifies "the specific non-U.S. Government email addresses he

used for U.S. Government ('USG') work-related purposes" and that "detail[s] the

methods he employed (and the individuals with whom he coordinated and/or

consulted)" during his record-retrieval process, among other things.  (Pls.' Mot. at 4.)

Plaintiffs insist that this information "is the same type of information that would have

been provided in such an agency affidavit if Mr. Reines had properly conducted his

official State business on a U.S. Government system, as opposed to his private e-mail

account(s)" (Pls.' Reply at 4), and thus, unless this Court orders discovery, two

different legal systems will effectively be created—one for records properly stored on

government systems, and one for records maintained outside of these systems (*see id.* at

6).

Plaintiffs are flatly wrong about these contentions, for one simple reason:  as

defense counsel clearly and cogently explained during the motion hearing, an agency's

threshold determination regarding which records to retain in its files is *entirely distinct* from the agency's subsequent search of maintained records pursuant to the FOIA—and these two duties should not be conflated.  (*See* Hr'g Tr. at 28:10−29:6.)  With respect to the initial retention decision, State has policies that require individual employees to determine whether a document (including an email) qualifies as a federal record that must be retained, or is instead a non-federal record that need not be retained.  (*See id.* (citing 5 F.A.M. § 443.2)); *see also* 5 F.A.M. § 443.2 ("E-mail message creators and recipients must decide whether a particular message is appropriate for preservation.  In making these decisions, all personnel should exercise the same judgment they use when determining whether to retain and file paper records.").  State does not directly oversee or inspect its employees' retention determinations, nor does it ever require employees to provide, in the FOIA context, a declaration explaining how they reached these retention decisions.  (*See* Hr'g Tr. at 28:21−29:3, 43:19−44:3.)  Instead, the employees' individual retention decisions, taken together, effectively create the universe of records that State maintains, and eventually searches, when the agency receives a FOIA request. (*See id.* at 43:24−44:21 (defense counsel confirming that only those documents that are retained are searched for FOIA purposes).)  Thus, even when a court is evaluating the adequacy of the agency's search of records that have always remained under the agency's control, the affidavit that the agency provides in support of any motion for summary judgment describes only how its agent or employee conducted a search of the *records that have been retained*, and never addresses how each individual employee reached the threshold retention decision with respect to the records that were searched. (*See id.*)

In the instant case, State has proffered a declaration from Eric Stein (an agency official who is responsible for responding to FOIA requests) which explains the methods Stein used to search for records responsive to Plaintiffs' FOIA request. (*See* Stein Decl. at 5–14.)  In particular, Stein details the processes he employed to search both the records originally in State's possession and also those records that State later collected from Reines. (*See id.*)  In their opposition to State's summary judgment motion, Plaintiffs may, of course, challenge the adequacy of Stein's methodology; such challenges to an agency's search of the records in its possession are commonplace at the summary judgment stage.  What will not be countenanced is Plaintiffs' extraordinary attempt to mount an adequacy challenge on the grounds that the *threshold retention decisions* may have been improper.

It is clear to this Court that when Reines searched his private email account for federal records, he was operating in the realm of making the same type of initial retention decisions that are, as a matter of State Department policy, always delegated to individual employees and rarely, if ever, detailed in a FOIA affidavit.  Plaintiffs may reasonably be concerned that Reines should have undertaken his retention responsibilities prior to his departure from State, but the fact that he failed to search his private email account for federal records before leaving the government does not change the fundamental nature of his task, nor does it alter the reality that State employees are not ordinarily required to provide an account of their retention decisions in a FOIA affidavit.  Thus, far from being deprived of salient details regarding the agency's search with respect to records kept in personal email accounts, Plaintiffs here are seeking *more* information than would otherwise be available to them had the

requested records been properly stored on government systems.

Undaunted, Plaintiffs point to the fact that State regularly asks the agency employees who prepared the relevant records to conduct searches in response to FOIA requests, such that, had Reines been employed by State at the time that State processed Plaintiffs' request, State may well have directed Reines to search his email account in response to Plaintiffs' FOIA request, and thereafter detail the search terms employed in the form of an affidavit.  (*See* Hr'g Tr. at 38:1–23; *see also* Pls.' Reply at 4.)  But even if that is true, this contention once again fails to appreciate the distinction between the retention decision and an agency's search processes under the FOIA.  That is, in all likelihood, the hypothetical Reines declaration would describe the process Reines employed when searching for records *responsive to Plaintiffs' specific FOIA request*, and would not cover Reines's threshold retention determinations, per State's usual practices as explained above.  Nevertheless, for reasons that are not entirely clear, Plaintiffs here contend that the requested information regarding Reines's threshold retention assessment—a type of information that is ordinarily not made available to FOIA plaintiffs and is not used by courts in evaluating the adequacy of an agency's search under the FOIA—is important enough that this Court cannot proceed to evaluate the adequacy of State's search without it.

Plaintiffs are mistaken.

## IV.   ORDER

This Court concludes that the requested discovery is not relevant to the adequacy of the agency's search (the issue presented in Defendant's pending summary judgment

motion), and that, regardless, Plaintiffs' discovery request seeks information beyond that typically available to FOIA requesters.  Accordingly, it is hereby

      **ORDERED** that Plaintiffs' [44] Cross-Motion for Discovery is **DENIED**.  It is

      **FURTHER ORDERED** that the following expedited briefing schedule shall be implemented, given that the sole outstanding issue in this matter is the adequacy of State's search (*see* Dec. 19, 2016 Joint Status Report, ECF No. 39, at 1), and State's motion for summary judgment on this issue has been pending since January 31, 2017: Plaintiffs' opposition to Defendant's [41] motion for summary judgment and any cross-motion for summary judgment is due on or before **August 4, 2017**; Defendant's consolidated summary judgment reply and cross-motion opposition is due on or before **August 18, 2017**; and Plaintiffs' cross-motion reply is due on or before **August 29, 2017**.  No requests for extensions of time will be granted.  Alternatively, Plaintiffs may notify the Court within the time period set for its consolidated cross-motion and opposition brief that litigation will no longer be necessary in light of the Court's ruling on the instant motion for discovery.

DATE:  July 17, 2017           *Ketanji Brown Jackson*
                               KETANJI BROWN JACKSON
                               United States District Judge